THOMAS R. LYON v. HERBERT A. TIFFANY AND RICHARD A. SEYMOUR.

*Shipping—Contract—Parol evidence—Implied condition as to seaworthiness of vessel.*

1. Matters lying outside of a *written* contract should be scanned very closely before being allowed to affect it.

    So *held*, where plaintiff sought to recover the price agreed to be paid in a written contract for the use of a tug and two scows to transport lumber, and the defendants sought to show that plaintiff's agent made false representations concerning the *speed* and carrying *capacity* of the leased property, and the *price* received from other parties under a similar contract; which questions are held not to be foreclosed, and that damages arising from *these* causes, if they exist, can be recouped, the contract having been performed.

2. Where scows are chartered for the transportation of lumber, which is claimed to have been damaged by excessive leakage, if nothing is said on the subject, *seaworthiness* is an *implied* condition of the hiring, and whatever qualifications may exist to this doctrine cannot exonerate from responsibility for a tight hull that would resist *such* leakage.

3. Under a contract for the hiring of scows for the transportation of lumber, which provides that the owners of the lumber assume *all* liability for loss or damage to the cargoes from whatever cause, if water is shipped during the voyage, by the ordinary fortunes of proper navigation, the risk is on such owners, but not so if from the unseaworthiness of the scows; and in a suit involving *these* questions it is error to take them from the jury.

Error to Manistee. (Judkins, J.) Argued June 14, 1889. Decided July 11, 1889.

*Assumpsit.* Defendants bring error. Reversed. The facts are stated in the opinion, as also the *points* of counsel passed upon by the Court.

*McAlvay & Grant,* for appellants.

*Ramsdell & Benedict,* for plaintiff.

CAMPBELL, J. On the twenty-seventh day of August, 1887, the plaintiff leased to defendants for two trips, to carry lumber from Oscoda to Chicago, two scows and a tug. It is claimed by defendants that his agent made false representations concerning the speed and carrying capacity of the tug and scows, both of which are claimed to have fallen materially short of what was represented. It was also claimed that in fixing the price, which was $235 a day, plaintiff's agent misrepresented the terms of an existing contract with the Mackinaw Lumber Company, which he said paid $235 a day, by concealing the fact that $50 a day reduction was made while loading and unloading.

Upon the trial the court below allowed the defendants to go to the jury on questions of delay and loss therefrom, but refused to let the jury pass upon any other questions. During the passage, the scows leaked, or took in water in some way, to such an extent that the lower tiers of lumber were moulded and discolored, creating damage in sales. There was some testimony that this was from excessive leakage. This the court held was at defendants' risk, under a clause in the contract whereby it was provided that defendants assumed all liability for loss or damage to the cargoes from whatever cause, and that neither Lyon nor the tug and scows should in any way be held responsible should a loss occur.

The testimony does not indicate very clearly any such difference in speed as would indicate misrepresentation, and there was no warranty on the subject. The weather was not very favorable, and a very clear case must be made out to authorize any recovery on that score. Still, the probable length of the passage, when paid for by the day, cannot be said to be unimportant, if such positive representations were made as affected the making of the contract. We should not be disposed to reverse on this ground, as the record stands.

And the same remark will apply to the representations about the Mackinaw price and the capacity of the scows.

Defendants' testimony did not undertake to give the whole conversation concerning the Mackinaw contract, and as given we are not satisfied that plaintiff's agent understood that he was expected to give all its details. It was evidently drawn on the same form as defendants', and differed from it only in that one particular. And there is in each a clause requiring weekly payments of $200 a day, which might either at the beginning or at the end of the voyages exceed the whole sum due, if $50 a day were to be deducted for lay-days. We are not prepared to say that either the $50 clause, or the capacity of the scows, was so plainly brought into the bargaining by way of assurance or warranty that the written contract would be affected by it. Of course, in this matter, if defendants' testimony made out a case, the fact that it was fully met and denied would not take it from the jury. But it is clear from defendants' testimony that no account was taken of the greater bulk per thousand, and greater weight, of the Oscoda lumber over that of the west shore. As these questions may possibly arise on another trial, we do not wish to foreclose them, but it is very certain that matters lying outside of a written contract should be scanned very closely before being allowed to affect it. We do not think such damages as can be traced to these causes need be turned over to another suit. The contract has been performed, and the doctrine of recoupment is broad enough to cover them, if they exist.

Upon the question of damage by water there was testimony which, if true, tended to show, not only that the scows were not kept clear, but that water came in by such leakage as might indicate a want of seaworthiness. From the control reserved to the captain of the tug it cannot be held that he was exonerated from plaintiff's control, and put under defendants'. Their charter was considerably limited. It would be unreasonable to construe it as exposing defendants to the risk of misconduct either of plaintiff or of his cap-

tain.[1] But it is established law that, where there is nothing said on the subject, seaworthiness is an implied condition of such a hiring.    Whatever qualifications may exist to this doctrine could not exonerate from responsibility for a tight hull that would resist excessive leakage.    Abb. Shipp. 340, and notes; 3 Kent, Comm. 205 *et seq.*; 1 Pars. Shipp. 339.    And it is held that damages may be recouped or set off in such a case. 1 Pars. Shipp. 339.

If the water was shipped during the voyage by the ordinary fortunes of proper navigation, the risk under this contract was on defendants.    But the testimony bore, to some extent at least, in the other direction; and the effect of the bilge-water on the lumber, if not exaggerated, indicated something more than the washing in of fresh water from above.    All this should have gone to the jury.    For this question of liability for bad condition as to seaworthiness, the judgment must be reversed, and a new trial granted, leaving the other points open for proof, if any is made out.

Judgment of reversal, with costs, and for a new trial, will be entered accordingly.

CHAMPLIN and LONG, JJ., concurred.    SHERWOOD, C. J., and MORSE, J., did not sit.

---

[1] The contract contained the following conditions:

*a*—The scows shall be under the charge of Captain Wm. Courtland and, if the tug is ordered away from them, defendants shall be responsible for the scows if lost or damaged during Courtland's absence with the tug.

*b*—Defendants shall do all loading and unloading of the scows, and in a manner satisfactory to said captain.